IN RE DENIAL OF REQUEST BY HUMANA HOSPITAL CORPORATION, INC. FOR RECONSIDERATION HEARING FOR PROJECT NO. J-1561-81 PROPOSED CONSTRUCTION OF PARKWAY MEDICAL CENTER

No. 8510SC443

(Filed 7 January 1986)

**Hospitals § 2.1— denial of certificate of need—subsequent application—alleged errors involving first application rendered moot**

Where petitioner filed its application in 1981 with the Certificate of Need Section, Division of Facility Services, Department of Human Resources proposing the construction of a 160 bed general acute care hospital in the Apex-Cary portion of Wake County and the application was denied because the 1979-80 State Medical Facilities Plan showed no need for additional acute care beds through the year 1986 in the area which included Wake County, any alleged errors in the denial of a reconsideration hearing of petitioner's 1981 application and the 1981 review process were moot, since petitioner filed a 1982 application proposing essentially the same structure and services as its 1981 application; the 1982 application was reviewed under the 1981-82 State Medical Facilities Plan which projected a need of 174 beds by the year 1987 and the issue of bed need was therefore no longer in controversy; there was no merit to petitioner's argument that mootness would only be applicable to its claims against the 1981 review process if it had subsequently been awarded a certificate of need; and petitioner was not entitled to priority status because it was the only applicant in the 1981 review process to request a reconsideration hearing and an administrative appeal.

APPEAL by petitioner from *Brewer, Judge* and *Battle, Judge*. Judgments entered 29 November 1982 and 16 January 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 30 October 1985.

On 12 June 1981, petitioner, Humana Hospital Corporation, Inc. (hereinafter "Humana") gave written notice to the Certificate of Need Section, Division of Facility Services, Department of Human Resources (the Section) of its intent to apply for a certificate of need. By memorandum, dated 7 August 1981, the Section advised petitioner and other interested parties that the 1979-80 State Medical Facilities Plan (1979-80 SMFP) would be applied to all applications deemed complete on or before 31 December 1981, or the effective date of the 1981-82 State Medical Facilities Plan (1981-82 SMFP), whichever occurred first.

On 17 August 1981, Humana filed its application with the Section, proposing the construction of a 160 bed general acute

care hospital in the Apex/Cary portion of Wake County. The application was deemed complete on 8 September 1981. Humana filed a second application on 3 December 1981, which proposed essentially the same physical plant and services as the first proposal. On 4 December 1981, the Section denied Humana's first application along with two other applications based on similar proposals. In denying these three applications, the Section applied the 1979-80 SMFP which showed no need for additional acute care beds through the year 1986 in the area which included Wake County.

The 1981-82 SMFP went into effect 1 January 1982 and projected a bed need for the year 1987 of 174 beds. On 4 January 1982, Humana requested a reconsideration hearing on its first application primarily on the ground that the 1981-82 SMFP, showing a need for beds, had been adopted. Humana's request for a reconsideration hearing was denied on the ground that changes in the SMFP were not relevant to Humana's first application. On 19 January 1982, Humana was granted a contested case hearing by the Section.

On 17 February 1982, Humana filed, in the Superior Court, a petition for judicial review of the Section's decision denying it a reconsideration hearing. Later, the petition was amended to include judicial review of the Section's denial of Humana's 1981 application. The Section answered, denying the material allegations, and raised several affirmative defenses including mootness and lack of prejudice in its refusal to grant a reconsideration hearing. Hospital Building Company d/b/a Raleigh Community Hospital, Wake County Hospital System, Inc., and certain named individuals on behalf of low income residents of Wake County were permitted to intervene in support of the Section's denial of Humana's 1981 application.

At the same time Humana was pursuing judicial review of its first application, its second application was being reviewed by the Section under the 1981-82 SMFP which projected a need of 174 beds for the year 1987. Humana's second application was denied on 28 May 1982 and this decision was affirmed in a reconsideration hearing. Although Humana's 1982 application was denied, Hospital Building Company and Wake County Hospital System, Inc., which were the other two applicants in the 1981 review process, were granted approval of their 1982 applications.

On 29 November 1982, Judge Brewer entered summary judgment in the Section's favor, dismissing Humana's petition "on the grounds that the availability to Petitioner of participation in the 1982 review process constituted an adequate remedy for any procedural deficiencies or other errors that may have been made in the 1981 review process." Humana appealed, raising constitutional questions which had not been addressed by the court below. This court dismissed the appeal as premature. *In Re Denial of Request of Humana Hospital Corp.*, 68 N.C. App. 162, *disc. rev. denied,* 311 N.C. 757, 321 S.E. 2d 135 (1984), Humana then submitted to a voluntary dismissal of its constitutional claims and a final judgment was rendered in this case on 16 January 1985. Humana gave notice of appeal from the entry of summary judgment on 29 November 1982 and from the entry of final judgment on 16 January 1985.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John R. Corne, and Johnson, Gamble, Hearn & Vinegar, by George G. Hearn and M. Blen Gee, Jr., for respondent appellee.*

*Sanford, Adams, McCullough & Beard, by Charles H. Montgomery and Renee J. Montgomery, for petitioner appellant.*

*Hollowell & Silverstein, P.A., by Edward E. Hollowell and Robert L. Wilson, Jr., for Wake County Hospital System, Inc., intervenor appellee.*

*Jordan, Brown, Price & Wall, by John R. Jordan, Jr., Joseph E. Wall, and Stephen R. Dolan, for Hospital Building Company, intervenor appellee.*

*East Central Community Legal Services, by Gregory C. Malhoit, and Legal Services of the Lower Cape Fear, by Richard Klein, for Hubert A. Evans, et al., intervenor appellee.*

MARTIN, Judge.

Humana contends on appeal that the Section committed violations of its own administrative procedures in the 1981 review process and in denying Humana's application for a reconsideration hearing on its 1981 application. In addition, Humana assigns error to the Superior Court's decision that Humana has been afforded an adequate remedy and its claims are moot. We do not address

the issues concerning the procedural violations because we agree with the Superior Court that Humana's claims are moot.

The doctrine of mootness is applicable to an appellate proceeding where the original question in controversy is no longer at issue. In *State ex rel. Utilities Comm. v. Southern Bell Tel. & Tel. Co.*, our Supreme Court held that

> [w]hen, pending an appeal to this Court, a development occurs, by reason of which the questions originally in controversy between the parties are no longer at issue, the appeal will be dismissed for the reason that this Court will not entertain or proceed with a cause merely to determine abstract propositions of law or to determine which party should rightfully have won in the lower Court.

289 N.C. 286, 288, 221 S.E. 2d 322, 324 (1976). The doctrine of mootness was also applied in *In re Peoples* where the Court held that

> [w]henever, during the course of litigation it develops that the relief sought has been granted or that questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

296 N.C. 109, 147, 250 S.E. 2d 890, 912 (1978). Applying the doctrine of mootness, as defined above, to the present case, we find that the relief sought by Humana has been adequately provided for and that questions originally in controversy are no longer at issue.

The record reveals that in Humana's request for a reconsideration hearing concerning the denial of its 1981 application, Humana stated two grounds as "good cause" for a reconsideration hearing, pursuant to 10 NCAC 3R .0801. First, Humana asserted that there was a change in the State Medical Facilities Plan showing a need for 174 beds in the area, including Wake County. Second, Humana submitted additional information relating to special criteria. In addition, Humana made reference to information submitted in November, which was not considered part of Humana's 1981 application because it was submitted after the review of its first application had begun. 10 NCAC 3R .0510.

Humana basically sought a review of its 1981 application under the SMFP effective 1 January 1982, enhanced by additional information, in its request for a reconsideration hearing. Humana's 1982 application, which was virtually identical to its 1981 application, was reviewed under the 1981-82 SMFP and contained the additional information Humana wished to submit. The Superior Court found that the relief sought by Humana was provided for through the review of its 1982 application. We agree. Therefore, Humana's assignments of error relating to the denial of a reconsideration hearing concerning its 1981 application are moot.

Similarly, Humana's assignments of error as to the review process of its 1981 application are also moot. Humana basically alleges that the Section erred in reviewing its 1981 application under the 1979-80 SMFP which projected no bed need for the area including Wake County. Humana alleges that the Section should have applied the 1981-82 SMFP which projected a bed need by the year 1987. Regardless of which plan the Section applied, however, Humana claims that the Section should have considered information in its application which projected a bed need in the area.

The thrust of Humana's argument is that there was a bed need in 1981 and that its 1981 application should have been reviewed in light of this fact. The bed need controversy was no longer at issue however, when the 1981-82 SMFP, projecting a need of 174 beds by the year 1987, went into effect 1 January 1982. Humana's 1982 application, which proposed essentially the same structure and services as its 1981 application, was reviewed under the 1981-82 SMFP. We agree with the Superior Court that the 1982 review process afforded Humana an adequate remedy to have its application reviewed under a plan projecting a bed need, regardless of any alleged error in the 1981 review process. Therefore, the assignments of error as to the review process of Humana's 1981 application are moot because the issue of bed need is no longer in controversy.

In support of our decision, we consider it significant that Humana's 1981 and 1982 applications were almost identical and that no certificate of need was issued to any applicant in the 1981 review process. The only significant distinction between the two

applications is that the 1982 application contained information submitted by Humana in November which was not considered as a part of the 1981 application because it was submitted after the 1981 application was deemed complete. 10 NCAC 3R .0510. Furthermore, the 1982 application contained additional information relating to special criteria which was not available in the 1981 application.

Humana contends that the 1981 and 1982 application cycles were different because changes were made in the procedure used to evaluate applications (*see generally*, 1981 N.C. Sess. Laws, c. 651; 10 NCAC Subchapter 3R (effective 1 October 1981)); therefore, the review of its 1982 application did not adequately provide a remedy for the alleged error in its 1981 application. In addition, Humana points out that the 1982 application was revised to conform with the regulations in effect in 1982. Finally, Humana emphasizes the fact that there were three applicants in the 1981 review process and five applicants in the 1982 review process, and that the two other applicants in 1981 rewrote their respective applications for the 1982 review.

We do not believe that Humana has shown that any of its rights have been prejudiced by having to reapply for review in 1982. The differences in the two application cycles pointed out by Humana relate to procedure. It is a generally recognized principle in this state, and in most other jurisdictions, that there is no vested right in any particular mode of procedure or remedy. 16 Am. Jur. 2d § 675, Constitutional Law (1979); *see also Byrd v. Johnson*, 220 N.C. 184, 16 S.E. 2d 843 (1941). However, no procedural change can disturb vested rights. *Gardner v. Gardner*, 300 N.C. 715, 268 S.E. 2d 468 (1980). A vested right is that "which is otherwise secured, established, and immune from further legal metamorphosis." *Id.* at 719, 268 S.E. 2d at 471.

Humana had a right to apply for a certificate of need and to have its application reviewed fairly under the appropriate plans, standards, and criteria. G.S. 131-175(1)-(7). This right was not disturbed by the changes in procedure from 1981 and 1982 and Humana was still afforded this right under the 1982 review process. G.S. 131E-175(1)-(7) (1985 Supp.). Therefore, the review of Humana's 1982 application provided an adequate remedy for the alleged errors in the review of Humana's 1981 application.

Humana further argues that mootness would only be applicable to its claims against the 1981 review process if Humana had subsequently been awarded a certificate of need. We disagree. Humana had only a right to a fair review of its application and not the absolute right to a certificate of need.

In *State ex rel. Utilities Comm. v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 286, 221 S.E. 2d 322 (1976) (*Southern Bell I*), Southern Bell appealed a denial of its first rate request and while the case was on appeal, filed a second application for a rate increase. Southern Bell was granted its second rate request and this decision was appealed. Even though the second proceeding might be subject to an appeal, the Supreme Court held that the first proceeding was moot on the ground that the second proceeding had granted a new rate to Southern Bell after a "full, adversary hearing and fresh desterminations of changed facts by the Commission." *Id.* at 290, 221 S.E. 2d at 324.

In the present case, Humana participated in a full adversary hearing and fresh determination of changed facts in the 1982 review process. The Section reviewed its 1982 application and held a reconsideration hearing based on the "changed facts" that 174 beds would be needed by 1987. Although Humana was denied a certificate of need in the 1982 review process, it received a review based on the projected bed need of 174 beds which it sought to be applied in the 1981 review process. The Certificate of Need Law secures to applicants the right to a fair review of an application and not the absolute right to a certificate of need. G.S. § 131-175 provides in pertinent part:

> (4) That this trend of proliferation of unnecessary health care facilities and equipment result in costly duplication and underuse of facilities, with the availability of excess capacity leading to unnecessary use of the expensive resources and overutilization of acute care hospital services by physicians.
>
> . . .
>
> (7) That the general welfare and protection of lives, health, and property of the people of this State require that new institutional health services to be offered within this State be subject to review and evaluation as to type, level, quality of care, feasibility, and other criteria as determined by provi-

sions of this Article or by the North Carolina Department of Human Resources pursuant to provisions of this Article prior to such services being offered or developed in order that only appropriate and needed institutional health services are made available in the area to be served.

G.S. § 131-175(4) and (7).

Humana contends that a more recent case, *State ex rel. Utilities Com'n v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E. 2d 763 (1983) (*Southern Bell II*), supports its argument that mootness would be applicable to its claims of error in the 1981 review process only if it had been awarded a certificate of need in the 1982 review. In that case, the Supreme Court held that a second application for a rate increase which was granted did not render the issues concerning the denial of the first rate request moot because the second rate increase, not being applied retroactively, would not give the full relief sought in the first application. The Court did not overrule *Southern Bell I* but the Supreme Court simply distinguished the two cases by pointing out that the two requests were the same in *Southern Bell I* but the two requests in *Southern Bell II* covered different time periods.

We believe that the present case is similar to *Southern Bell I* and distinguishable from *Southern Bell II*. In *Southern Bell II*, the two requests were for different time periods, while in the case *sub judice*, Humana's 1981 and 1982 applications requested approval of virtually identical proposals. Therefore, Humana was afforded an adequate remedy for the alleged errors in the 1981 review process by its participation in the 1982 review process. *See also Stewart v. Stewart*, 47 N.C. App. 678, 267 S.E. 2d 699 (1980); *In re Williamson*, 67 N.C. App. 184, 312 S.E. 2d 239 (1984).

Humana asserts that it is entitled to a priority status because it was the only applicant of the three applicants in the 1981 review process to request a reconsideration hearing and an administrative appeal. In essence, it is Humana's claim that its application should be reviewed under the 1981-82 SMFP in isolation from the competing applicants.

The United State Supreme Court has recognized that a priority status cannot be written into a statute by implication; instead, such priority would have to be conferred by legislative action.

*F.C.C. v. Pottsville Broadcasting Company*, 309 U.S. 134 (1940). In *Pottsville*, the Commission denied an application for a broadcasting license but on appeal the Court found the decision to be in error and remanded. As to the issue of whether the Commission should consider subsequent applications, the Court stated that

> [t]he Commission's responsibility at all times is to measure applications by the standard of "public convenience, interest, or necessity." The Commission originally found respondent's application inconsistent with the public interest because of an erroneous view regarding the law of Pennsylvania. The Court of Appeals laid bare that error, and, in compelling obedience to its correction, exhausted the only power which Congress gave it. At this point the Commission was again charged with the duty of judging the application in the light of "public convenience, interest, or necessity." The fact that in its first disposition the Commission had committed a legal error did not create rights of priority in the respondent, as against the later applicants, which it would not have otherwise possessed. Only Congress could confer such a priority. It has not done so. The Court of Appeals cannot write the principle of priority into the statute as an indirect result of its power to scrutinize legal errors in the first of an allowable series of administrative actions. Such an implication from the curtailed review allowed by the Communications Act is at war with the basic policy underlying the statute. It would mean that for practical purposes the contingencies of judicial review and of litigation, rather than the public interest, would be decisive factors in determining which of several pending applications was to be granted.

*Id.* at 145-146. The Court further noted that "an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge." *Id.* at 145.

The North Carolina Certificate of Need Law does not provide a priority status. G.S. § 131-182 provides that a final decision be made within a certain time period from the date of the notification of review. 10 NCAC 3R .0512 (effective 1 February 1979) pro-

vides for a competitive review whenever possible. Subsequent applications would have to be filed and deemed complete within the time frame provided by G.S. § 131-182 in order to compete with the initial application, however this does not grant a priority status on the initial application but merely imposes a time period on the Section for decisions. *See also* 10 NCAC 3R .0507 and .0509 (effective 1 February 1979). In addition, the purposes behind the enactment of the Certificate of Need Law were to regulate health care so that only those services which are needed and less costly but more effective are made available to the public. G.S. § 131-175 (1)-(7). Under *Pottsville,* the Section should not be foreclosed from carrying out the purposes and intent of the Certificate of Need Law by an alleged priority status obtained by an applicant being the only one of several applicants to exercise its rights to judicial review. Therefore, Humana is not entitled to a priority status.

We believe that our decision is in accord with the legislative purpose and intent in the enactment of the Certificate of Need Law. In enacting the Certificate of Need Law, the legislature found as facts that the forces of free market competition are largely absent in health care and government regulation is therefore necessary to control the cost, utilization, and distribution of health services and to assure that the less costly and more effective alternatives are made available. G.S. § 131-175(1)-(7); § 131-181(a)(4). By holding that Humana received an adequate remedy by having its application considered in the 1982 competitive review process, we adhere to the purpose of the Certificate of Need Law and the public policy considerations for which it was enacted.

Finally, we point out that our decision in the case *sub judice* is based upon and limited to the unique facts and circumstances surrounding this case. This opinion should not be construed as holding that the opportunity to reapply for a certificate of need automatically moots all procedural claims in all cases. We believe that, under the facts of this case, Humana has been afforded an adequate remedy by its participation in the 1982 review process and that any alleged errors in the denial of its reconsideration hearing of its 1981 application and the 1981 review process are moot. Therefore, the decision of the Superior Court is

Affirmed.

Chief Judge HEDRICK and Judge EAGLES concur.